IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

Jerome McCrea,                        )    Civil Action No.:2:11-45-RBH-BHH
                                      )
                    Petitioner,       )
                                      )    **REPORT AND RECOMMENDATION**
            v.                        )    **OF MAGISTRATE JUDGE**
                                      )
Warden Robert Stevenson,              )
                                      )
                    Respondent.       )

  The Petitioner, a state prisoner, seeks habeas relief pursuant to 28 U.S.C. § 2254.

This matter is before the Court on the Respondent's Motion for Summary Judgment.  (Dkt.

No. 26; see also Dkt. No. 27.)

  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and

Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review the instant

petition for relief and submit findings and recommendations to the District Court.

  The Petitioner brought this habeas action on or about January 5, 2011. (Dkt. No. 1.)

On June 15, 2011, the Respondent moved for summary judgment (Dkt. No. 26; see also

Dkt. No. 27.) By order filed June 16, 2011, pursuant to Roseboro v. Garrison, 528 F.2d 309

(4th Cir. 1975), the Petitioner was advised of the summary judgment dismissal procedure

and the possible consequences if he failed to adequately respond to the motion. (Dkt. No.

28.)  On or about June 27, 2011, Petitioner filed a Motion to Stay, seeking an Order holding

the matter in abeyance until he "properly exhausted all of his state remedies concerning the

issues raised in his habeas corpus application." (Dkt. No. 30 at 1.) On December 22, 2011,

Judge Harwell entered an Order denying Petitioner's Motion to Stay, and further ordering

that Petitioner "shall have twenty (20) days from the date of this Court's order to respond

to Respondent's Summary Judgment Motion." (Dkt. No. 40 at 3.) On January 17, 2012,

Petitioner filed a response opposing Respondent's Motion for Summary Judgment. (See Dkt. No. 43.)

## PROCEDURAL HISTORY

The Petitioner is currently confined at the Broad River Correctional Institution ("BRCI"). In May of 2002, a Williamsburg County Grand Jury indicted Petitioner–along with co-defendant Torrence McCrea–for murder, assault and battery with intent to kill ("ABWITK"), possession of a weapon during violent crime, discharging firearm at or into dwelling or occupied structure, lynching first degree, and lynching second degree. (Dkt. No. 27-5 at 187-89 of 189.) The Petitioner was represented by LeGrand Carraway, Esquire. (Dkt. No. 27-1 at 3 of 150.) A jury trial was held on May 19-21, 2003, before the Honorable Howard P. King, on the charges of murder, ABWITK, possession of a weapon during a violent crime, and discharging a firearm at or into a dwelling or occupied structure. (Dkt. No. 27-1 at 3 of 150 through Dkt. No. 27-5 at 59 of 189; see also Dkt. No. 27-1 at 20 of 150.) On May 21, 2003, the jury convicted Petitioner on the four charges tried, and Judge King sentenced him to (a) thirty years on the murder charge; (b) twenty years on the charge of ABWITK; (c) ten years on the charge of discharging a firearm at or into a dwelling or occupied structure; and (d) five years for possession of a weapon during a violent crime, concurrent. (Dkt. No. 1 at 1 of 14; Dkt. No. 27-5 at 57-58 of 189.)

Petitioner appealed and was represented on appeal by Robert M. Dudek, Esquire, of the South Carolina Office of Appellate Defense. (See Dkt. No. 27-6.) In an Anders[1] brief, appellate counsel argued that

> [t]he court erred by allowing the solicitor to have the victim's mother testify about the victim's life and his plans for the future, and by introducing a photograph of the decedent in his Marine Corps uniform. This was an orchestrated plea for the sympathy of the jury. It was irrelevant to any issue involved during the trial, and was improper under *State v. Livingston* and *State v. Langley.*

---

[1] Anders v. California, 386 U.S. 738 (1967).

(Dkt. No. 27-6 at 6 of 15.) Mr. Dudek also filed a petition to be relieved as counsel. (Dkt. No. 27-6 at 12 of 15.)

On December 3, 2004, the South Carolina Court of Appeals dismissed Petitioner's appeal and granted Dudek's petition to be relieved. See State v. McCrea, Unpublished Opinion No. 2004-UP-603 (S.C. Ct. App. Dec. 3, 2004). The Court of Appeals issued the remittitur on January 5, 2005. (Dkt. No. 27-8.)

On or about January 14, 2005, Petitioner filed an application for post-conviction relief ("PCR"). (See Dkt. No. 27-5 at 60-66 of 189.) The following questions and answers appeared in his PCR application:

> 10. State concisely the grounds on which you base your allegation that you are being held in custody unlawfully.
>
> Applicant's trial counsel ineffective in not moving before the circuit court, before trial, by motion, seeking a "severance" for applicant to be tried separately; improper reasonable doubt instruction–inter-alia:
>
> 11. State concisely and in the same order the facts which support each of the grounds set out in (10).
>
> Applicant's trial counsel failed to move for a severance and applicant was prejudiced as a result thereof; reasonable doubt instruction improper as trial counsel failed to object; and trial counsel failed to do a thorough investigation.

(Dkt. No. 27-5 at 62 of 189.) On or about March 14, 2006, Petitioner filed an Amended Application for Post-Conviction Relief, and on or about August 29, 2006, he filed a Second Amended Application for Post-Conviction Relief. (Dkt. NO. 27-5 at 75-88 of 189.) In these filings, Petitioner claimed that he was entitled to relief because counsel was ineffective for "failure to investigate, failure to locate witnesses and failure to interview or subpoena witnesses at the Defendant's request." (Dkt. No. 27-5 at 77 of 189; Dkt. No. 27-5 at 84 of 189.) In addition, on or about July 11, 2006, Petitioner filed an "Amendment to Post-Conviction Relief Application." (See Dkt. No. 27-5 at 73-74 of 189.) Petitioner stated that "the

3

. . . attached affidavit of Josephine Mouzon constitutes newly discovered evidence which would entitle Applicant to relief for judgment of conviction of murder because had such information and testimony been proffered at trial there is a reasonable probability that the results of the proceedings would have been different." (Id. at 73.) Petitioner asserted that Mouzon's affidavit cast doubt upon the testimony of Tony Gamble, the "only alleged eyewitness that testified to actually observing Applicant fir[e] a weapon on the night of the shooting when the victim was killed." (Id.) According to Plaintiff, Mouzon's affidavit suggests that Gamble was not present at the crime scene on the night in question. (Id. at 73-74; see also Dkt. No. 27-5 at 89 of 189.) Finally, in an undated "Amended Ground for Relief," Petitioner claimed trial counsel was ineffective for "failure to request a lesser included offense jury instruction where the evidence would have supported such." (Dkt. No. 27-5 at 90-93 of 189.)

On April 1, 2008, an evidentiary hearing was held before the Honorable Clifton Newman. (Dkt. No. 27-5 at 94-186 of 189.) Petitioner was present and represented by David Craig Brown, Esquire. In an order filed February 19, 2009, Judge Newman denied the application for post-conviction relief and dismissed the petition. (Dkt. No. 27-5 at 174- of 189.) In his order, Judge Newman noted that while Petitioner raised several additional grounds in his petition and amendments, only the only grounds presented at the PCR hearing were:

> 1. Ineffective assistance of counsel.
>     a. Counsel did not move for severance of trial.
>     b. Failure to investigate.
>         I. Failure to locate witnesses.
>         ii. Failure to subpoena witnesses.
>     c. Applicant not allowed to testify at trial.

(Dkt. No. 27-5 at 175-76 of 189.)

On August 7, 2009, Wanda Carter, Esquire, of the South Carolina Commission on Indigent Defense filed a petition for writ of certiorari on behalf of Petitioner. (See Dkt. No. 27-9.) Petitioner raised the following issue therein:

> Trial counsel erred in advancing the position that it was petitioner's duty to testify in his defense rather than developing alternative defense theories in the case because it is the right of the accused to plead not guilty and put the state to its burden to prove the accused's guilt beyond a reasonable doubt.

(Dkt. No. 27-9 at 3 of 9.) The Supreme Court of South Carolina entered an order denying the petition on November 18, 2010. (See Dkt. No. 27-11.) The matter was remitted to the lower court on December 6, 2010. (Dkt. No. 27-12.)

The Petitioner then filed the instant habeas action raising the following grounds for review:

> **Ground One**: Ineffective assistance of trial counsel
> **Supporting Facts**: Petitioner contends that trial counsel failed to properly and thoroughly investigate the facts surrounding his case prior to trial, and that said failure to investigate is the basis for his conviction. For example, several highly suspicious developments have manifested since petitioner's conviction which with the aid of a private investigator can be linked directly to the Williamsburg County Solicitor's office and the testifying witnesses that would constitute prosecutorial misconduct and malfeasance of public officials.
>
> **Ground Two:** Ineffective assistance of trial counsel
> **Supporting Facts**: Trial counsel erred in advancing the position that it was petitioner's duty to testify in his defense rather than developing alternative defense theories in the case because it is the right of the accused to plead not guilty and put the state to its burden to prove the accused's guilt beyond a reasonable doubt.
>
> **Ground Three**: Ineffective assistance of counsel
> **Supporting Facts**: Trial counsel failed to move for severance of the trials.
>
> **Ground Four**: Ineffective assistance of appellate counsel
> **Supporting Facts**: Appellate counsel failed to raise key issues on certiorari for the S.C. Supreme Court to review and render a decision upon.

(Dkt. No. 1.)

## APPLICABLE LAW

**Summary Judgment Standard**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id. (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)); see also Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990). **Habeas Standard of Review**

Since the Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. Lindh v. Murphy, 521 U.S. 320, 322-23 (1997); Breard v. Pruett, 134 F.3d 615, 618 (4th Cir.1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceeding.

28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that

6

the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." <u>Williams</u>, 529 U.S. at 410.

**Exhaustion and Procedural Bar**

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. The two theories rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

A.  Exhaustion

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions. Applications for writs of habeas corpus are governed by 28 U.S.C. § 2254, which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States." The statute states in part:

> (b) (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that
>
>> (A) the applicant has exhausted the remedies available in the courts of the State; or
>>
>> (B) (i) there is either an absence of available State corrective process; or
>>
>> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court. The United States Supreme Court has consistently enforced the exhaustion requirement.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal. SCAR 201; SCAR 207; SCAR 208; Blakeley v. Rabon, 266 S.C. 68, 221 S.E.2d 767 (1976). The second avenue of relief is by filing an application for PCR. S.C. CODE ANN. § 17-27-10 et seq. A PCR applicant is also required to state all of his grounds for relief in his application. S.C. CODE ANN. § 17-27-90. A PCR applicant cannot assert claims on collateral attack which could have been raised on direct appeal. Simmons v. State, 264 S.C. 417, 215 S.E.2d 883 (1975). Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. CODE ANN. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting

8

a writ of habeas corpus in the federal courts. <u>Patterson v. Leeke</u>, 556 F.2d 1168 (4th Cir. 1977); <u>Richardson v. Turner</u>, 716 F.2d 1059 (4th Cir. 1983).

### B. Procedural Bypass

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. <u>Smith v. Murray</u>, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, (i.e., direct appeal, appeal from PCR denial) and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote

> not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

 <u>Reed v. Ross</u>, 468 U.S. 1, 10-11 (1984).

If a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to

comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. <u>Murray v. Carrier</u>, 477 U.S. 478, 496 (1986).

### C. Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner before this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. <u>Matthews v. Evatt</u>, 105 F.3d 907 (4th Cir. 1997)(citing <u>Coleman v. Thompson</u>, 501 U.S. 722, 735 n. 1 (1991); <u>Teague v. Lane</u>, 489 U.S. 288,297-98 (1989); and <u>George v. Angelone</u>, 100 F.3d 353,363 (4th Cir. 1996)).

### D. Cause and Actual Prejudice

The requirement of exhaustion is not jurisdictional and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. <u>Granberry v. Greer</u>, 481 U.S. 129, 131 (1987). In order to have such claims considered, a petitioner must show sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, <u>Coleman</u>, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. <u>Murray</u>, 477 U.S. 478. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, demonstrate the novelty of a particular claim, or show interference by state officials. <u>Id</u>.

Absent a showing of "cause," the court is not required to consider "actual prejudice." <u>Turner v. Jabe</u>, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. <u>Murray</u>,

477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. He is required to prove that specific errors infected the trial and were of constitutional dimensions. United States v. Frady, 456 U.S. 152 (1982).

## DISCUSSION

Respondent moved for summary judgment on all of Petitioner's grounds for relief. (See Dkt. No. 21; Dkt. No. 27.) The undersigned will address all of Petitioner's grounds in turn.

## A. Ground One: Ineffective Assistance of Counsel for Failure to Investigate

As noted above, Petitioner contends that his trial counsel "failed to properly and thoroughly investigate the facts surrounding [Petitioner's] case prior to trial, and that said failure to investigate is the basis for his conviction." (Dkt. No. 1 at 5 of 14.) Petitioner states, "For example, several highly suspicious developments have manifested since petitioner's conviction which with the aid of a private investigator can be linked directly to the Williamsburg County Solicitor's office and the testifying witnesses that would constitute prosecutorial misconduct and malfeasance of public officials." (Id.)

Strickland v. Washington, 466 U.S. 668 (1984), states that a meritorious ineffective assistance of counsel claim must demonstrate two things: first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the defense. Id. at 687–96. A court's evaluation of counsel's performance under this standard must be "highly deferential," so as to not "second-guess" the performance. Id. at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. Id. (internal quotation marks and citation omitted); see also Bowie v. Branker, 512 F.3d 112, 119 n.8 (4th Cir. 2008); Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1297–99 (4th

11

Cir. 1992); <u>Roach v. Martin</u>, 757 F.2d 1463, 1467 (4th Cir. 1985). In order to establish the second prong of Strickland, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694. A "reasonable probability" has been defined as "a probability sufficient to undermine confidence in the outcome." <u>Id</u>.

### 1. The PCR Court Order

In his order dismissing McCrea's PCR application, Judge Newman addressed the Petitioner's claim that trial counsel "failed to investigate several witnesses." (Dkt. No. 27-5 at 180 of 189.) Judge Newman noted that McCrea testified he asked counsel by letter to investigate some witnesses: "Mr. Dozier as well as three other women" named Shaneil, Angie, and Tasha. (<u>Id</u>.) The PCR order further described the testimony at the PCR hearing:

> By his own testimony, Applicant did not provide the last names of the three women and stated that he did not have any contact with them before the trial. However, trial counsel testified that Applicant did not provide him any names of witnesses. Trial counsel testified that Applicant told him that Dozier and three girls had accompanied them to the club but did not indicate that Dozier had any information that would be helpful. Though he did not recall exact dates and did not have his file at PCR hearing, trial counsel testified that he met with Applicant several times at the jail and that he often visited the jail and visited many clients on each visit. Counsel testified that the solicitor had an open file policy. Counsel further testified that there had been a preliminary hearing where the eyewitnesses testified.

(<u>Id</u>. at 180-81.)

Judge Newman rejected this claim for ineffective assistance of counsel, first addressing the claim related to failure to investigate the three women. The order states,

> I find that counsel's failure to investigate the three women was not deficient under these circumstances. Counsel did not have any way of finding the women. Applicant testified that he did not provide last names of the women. Furthermore, the three women did not testify at PCR hearing. "Failure to conduct an independent investigation does not constitute ineffective assistance of counsel when the allegation is only supported by mere speculation as to the result." <u>Moorehead v. State</u>, 329 S.C. 329, 496 S.E.2d 415 (1998). Because none of the three women testified at PCR hearing, the

12

allegation that counsel should have investigated them is supported only by mere speculation.

(Dkt. No. 27-5 at 181.)

Judge Newman also found that counsel's failure to investigate Dozier did not entitle Petitioner to relief. Judge Newman noted that Dozier, Petitioner's cousin, did testify at the PCR hearing that he went to Huell's (the place where the shooting occurred) with Petitioner, Petitioner's brother and co-defendant Torrance McCrea, and the three women from North Carolina referenced above. (Id.) Judge Newman described Dozier's testimony as follows:

> Dozier testified that he had seen Applicant arguing with another patron, Fluitt, but was not close enough to hear what they were saying. Dozier stated that while it seemed that Fluitt had tried to "swing at" Applicant and may have had something in his hand, he could not clearly see what happened. Dozier said that he heard the shooting, but did not see it. He did testify that he saw the McCreas pull out their weapons. Dozier left the bar with another friend and stated that Applicant left before he did. When Dozier left, no one had been injured, so it appears that Dozier left after the first shooting. Dozier added that the man who was killed, Sumpter, was not part of the argument. Dozier did not come to the trial and made no attempt to contact Applicant after he was arrested.

(Id. at 181-82.)

Judge Newman concluded that "[c]ounsel's failure to investigate Dozier . . . was not unreasonable because he had no way to know that Dozier may have had beneficial information." (Id. at 182.) The PCR judge further found, however, that "even if counsel should have investigated Dozier, Applicant failed to demonstrate prejudice such that the outcome would have been different." (Id.) While Petitioner asserted that Dozier's testimony would have supported a theory of self-defense, Judge Newman rejected that contention, stating,

> Even if Dozier's testimony was found credible by the jury, Dozier did not clearly see what happened. He did not overhear the words exchanged or clearly see anything except for the McCreas drawing their weapons. Other witnesses at trial testified that there had been some sort of altercation between Fluitt and the McCreas before the first shooting began, so Dozier's

testimony in this regard would be superfluous. Most important, Dozier's testimony would not establish a defense theory of self-defense with regard to Fluitt because the McCreas left after the incident that Dozier witnessed. Dozier was not present when the McCreas returned and Fluitt was shot and Sumpter was killed. Because Dozier was not present when the shooting causing the injuries occurred, Dozier's testimony fails to establish the elements required to establish self-defense. The testimony may have actually been detrimental to the theory that the McCreas either did not fire their weapons or were not the only ones in the confusion who fired shots.

(Id. at 182-83.)

The PCR judge then addressed the testimony of Josephine Mouzon. Ms. Mouzon, whose son was a friend of Petitioner, testified that on the evening of the crimes, she was at a party, and one of the witnesses at trial, Tony Gamble ("Gamble"), was also at that party. (Id. at 183.) Judge Newman described her testimony as follows:

Ms. Mouzon could not say how many times she saw Gamble at the party and did not keep track of him. Ms. Mouzon was not a witness at the club where the crimes occurred. She testified that Gamble was at the party at the time ofthe shooting but did not know what time the shooting occurred. Ms. Mouzon stated that she attended the trial one day out of curiosity. She recalled that Gamble testified on the day she attended the trial but did not recall what his testimony was or any other witnesses testifying while she was there. Ms. Mouzon stated that she told Applicant's mother at the trial that she had seen Gamble on the evening of the crimes, but Ms. Mouzon did not tell trial counsel and did not know who Applicant's attorney was. Applicant did not testify that he had told counsel about Ms. Mouzon. Ms. Mouzon testified that she had never talked to law enforcement about the case.

(Id. at 183.) The PCR court concluded that counsel's "failure to investigate and subpoena Ms. Mouzon under these circumstances does not constitute deficient performance." (Id. at 184.) The PCR order states,

Neither Applicant nor his mother mentioned Ms. Mouzon to trial counsel. Ms. Mouzon was never interviewed by law enforcement, so he had no way to know of her. I further find that Applicant has failed to carry his burden of demonstrating prejudice regarding Ms. Mouzon's testimony such that the outcome of the trial would have been different. Gamble was not the only eyewitness at trial who claimed to have seen the McCreas, and other witnesses said that Gamble was at the bar that evening. Further, because she was unable to specifically account for Gamble's whereabouts during the entire

evening, her testimony does not sufficiently cast doubt on the possibility that Gamble witnessed the shooting such that the outcome of the trial would have been different.

(Id.)

### 2. Analysis

In his Motion for Summary Judgment, Respondent contends this issue has been procedurally defaulted and that Petitioner failed to establish cause to excuse the default. (Mem. in Supp. of Mot. for Summ. J. at 10.) Respondent also argues that Petitioner "fails to actually state a specific claim" and that the claim "is essentially too vague to address." (Id. at 11-12.)

In opposing the motion, Petitioner states that his counsel in the PCR action "submitted testimonies in [support] of the . . . allegation[s]." (Resp. in Opp'n at 2.) Petitioner references Ms. Mouzon's testimony and states, "[While] . . . she could not account for Gamble's whereabouts for the entire length of the party she states firmly that [she] and Gamble [left] the gathering at the same time in order to pursue [sic] to the club to investigate the information." (Id. at 2-3.) Petitioner also asserts that Mr. Dozier "could provide testimony in his defense." (Id. at 3.) McCrea states, "Had counsel spoken with witness Mr. Dozier he would have discovered that it was actually the petitioner who was reacting only in fear of his own life. That it was the victim who actually was the aggressor in this matter, and that petitioner had [the] right to defend himself." (Id. at 4.) In addition, Petitioner states that "there were three other females mentioned by petitioner and petitioner's brother who were eyewitnesses available to support a self-defense or a lesser-included offense claim." (Id. at 5.)

To the extent Petitioner is claiming trial counsel was ineffective for failing to investigate the witnesses referenced in his Response in Opposition to the Motion for Summary Judgment, the undersigned recommends granting Respondent's Motion for

15

Summary Judgment.[2] The PCR judge addressed Petitioner's contentions with respect to Ms. Mouzon, Mr. Dozier, and the three women from North Carolina, and this adjudication did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law. See 28 U.S.C. § 2254(d). Nor was the state court adjudication based on an unreasonable determination of the facts in light of the evidence presented at the PCR proceeding. Id. As Judge Newman noted, Petitioner testified that he did not provide the last names of the three women to trial counsel, nor did they testify at the PCR hearing. Judge Newman also concluded that trial counsel had no way to know of Ms. Mouzon, as neither Petitioner nor his mother mentioned her to trial counsel, and she was never interviewed by law enforcement. (Dkt. No. 27-5 at 184.) Finally, with respect to Mr. Dozier, the PCR court concluded that trial counsel "had no way to know that Dozier may have had beneficial information," and, in any event, "[b]ecause Dozier was not present when the shooting causing the injuries occurred, Dozier's testimony fails to establish the elements required to establish self-defense." (Dkt. No. 27-5 at 182-83.) Pursuant to the standards set forth in the AEDPA, the undersigned recommends granting summary judgment to Respondent on this claim.

**B. Ground Two: Ineffective Assistance of Counsel Regarding "Duty to Testify"**

In Ground Two, Petitioner claims that his trial counsel was ineffective for "advancing the position that it was petitioner's duty to testify in his defense rather than developing alternative defense theories in the case because it is the right of the accused to plead not guilty and put the state to its burden to prove the accused's guilt beyond a reasonable doubt." (Dkt. No. 1.) Respondent contends he is entitled to summary judgment on this claim

---

[2]To the extent Petitioner seeks to assert this claim for unnamed witnesses, that claim must also be rejected. As Respondent notes, a claim that Petitioner *may* be able to find some evidence if he has a private investigator does not–without more–state a claim for relief.

because although Petitioner raised this claim in his PCR application, it was not addressed by the PCR judge, and the claim was therefore "not procedurally available for review." (Mem. in Supp. at 12.) Respondent also asserts the claim lacks merit "if, for no other reason, because the record shows that Petitioner testified at the PCR hearing that trial counsel did not advise him about his right to testify, or even talk with him about the need to testify, prior to trial." (Id. at 13.) In addition, Respondent states that the trial judge advised Petitioner "about his right to testify, and have the trial judge instruct the jury that the failure to testify could not be held against him, and further clarified that the right was his personal right, and his personal decision whether to testify or not to testify." (Id.)

Petitioner did not address this claim in his Response in Opposition to the Motion for Summary Judgment. (See Dkt. No. 43.)

The undersigned recommends granting summary judgment to Respondent on Ground Two. First, as Respondent notes, because this issue was not addressed by the PCR judge, the issue was not preserved for appellate review. The PCR judge did, however, address and reject the Petitioner's contention that he was not allowed to testify at trial. (See Dkt. No. 27-5 at 184 of 189.) Judge Newman's order states,

> Applicant was instructed on the record by the trial judge of his right to testify and chose not to testify. (Trans. p. 438 – 439.) Trial counsel testified that he wanted his client to testify but that both Applicant and Torrance McCrea were adamant that they did not wish to testify. Even if Applicant had not been clearly instructed on his rights, he failed to demonstrate any prejudice from his decision not to testify. Applicant offered no testimony that would have benefitted his case.

(Id. at 184-85.)

The undersigned recommends granting summary judgment on this ground. Petitioner claimed in his PCR application that he was not allowed to testify at his trial; he now claims that his counsel was ineffective for "advancing the position that it was petitioner's duty to

testify in his defense." It is undisputed that Petitioner did not testify at his trial, and the PCR judge determined that Petitioner offered no testimony at his PCR hearing that "would have benefitted his case." (Id. at 185.) In addition, aside from the witnesses discussed above, it is unclear what evidence Petitioner contends would support his theory of self-defense. Petitioner is therefore unable to establish the prejudice prong of Strickland and is therefore not entitled to relief.

## C. Ground Three: Ineffective Assistance of Counsel for Failure to Seek Severance

Petitioner claims in Ground Three that his trial counsel was ineffective for failing to seek a severance of Petitioner's trial from that of his brother and co-defendant Torrance McCrea. (See Dkt. No. 1.) The PCR judge addressed this claim, noting that trial counsel did not move to sever the trials and testified that Petitioner "never asked him to make a motion for severance and that [counsel] did not believe a severance was necessary." (Dkt. No. 27-5 at 178-79 of 189.) The PCR judge concluded that Petitioner was not entitled to relief:

> This Court finds that the Applicant failed to carry his burden to show that trial counsel's representation fell below the standard of professional reasonableness for a criminal defense attorney in this regard. Strickland v. Washington; Cherry v. State. In this case, the co-defendants did not have mutually antagonistic defenses. The facts giving rise to the charges were the same with regard to each defendant, and the witnesses were the same for each defendant. Except for Torrance McCrea's statement, there is no evidence which came out at the joint trial that would not have come out if Applicant had been tried independently. Torrance McCrea's statement did not implicate Applicant in any way. Counsel indicated he was never asked to file a motion to sever and saw no reason to sever the trial. Counsel testified that the two co-defendants' stories were consistent in that they both felt threatened and claimed that there was a great deal of confusion and that they had not shot anyone. Further, since neither Applicant nor Torrance McCrea planned to testify, trial counsel did not see any need for a severance. Under these circumstances, I find that trial counsel's failure to move for a severance was not unreasonable under professional norms.
> Applicant has also failed to demonstrate prejudice from the joint trial. There is little chance that a motion for severance would have been granted in this case. Applicant has not pointed to any negative impact that the joint trial had on the outcome in this case. Therefore, this Court finds that the Applicant has failed demonstrate prejudice from counsel's failure to move for a

> severance of the two trials. This allegation of ineffective assistance of counsel for failure to move for a severance of the two trials is denied.

(Id. at 179-80.)

Respondent contends he is entitled to summary judgment on this claim because the claim is procedurally defaulted given that Petitioner did not raise the claim in his PCR appeal. (Mem. in Supp. at 14.) In the alternative, Respondent contends that "[a]s the record fully supports the facts relied upon by the PCR judge, and the Order shows a reasonable application of *Strickland*, Petitioner would not be entitled to any relief even if his issue could be heard." (Id. at 17.)

Petitioner did not address this claim in his Response in Opposition to the Motion for Summary Judgment. (See Dkt. No. 43.)

The undersigned recommends granting Respondent's Motion for Summary Judgment on this claim. As Respondent notes, Petitioner failed to raise this claim in his PCR appeal. In addition, this claim does not meet the standard set forth in § 2254(d); the PCR judge's determination of this issue did not result in a decision that was contrary to, or involved an unreasonable application of, Strickland v. Washington. The PCR judge concluded, *inter alia*, that Petitioner failed to show any prejudice from counsel's failure to move for a severance, and this conclusion was not an unreasonable application of Strickland. The undersigned therefore recommends granting Respondent's Motion for Summary Judgment on this claim.

## D. Ground Four: Ineffective Assistance of Appellate Counsel

Petitioner's fourth ground for relief is that he received ineffective assistance of appellate counsel. Petitioner states, "Appellate counsel failed to raise key issues on certiorari for the S.C. Supreme Court to review and render a decision upon." (Dkt. No. 1.) Respondent moved for summary judgment on this claim on the grounds that the claim "is specifically barred by statute." (Mem. in Supp. at 17.) Petitioner did not address this argument in his Response in Opposition. (See Dkt. No. 43.)

19

Respondent is entitled to summary judgment on this claim. From a review of the record, it appears that Petitioner is complaining about his counsel during his PCR proceedings. (See Dkt. No. 38.) However, as the undersigned noted in a previous Report and Recommendation (Dkt. No. 34), and District Judge Harwell concluded in his Order dated December 22, 2011 (Dkt. No. 40), the "ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i); see also Mackall v. Angelone, 131 F.3d 442, 449 (4th Cir. 1997) (noting that a petitioner "has no right to effective assistance of counsel in his state habeas proceedings"). The undersigned therefore recommends granting Respondent's Motion for Summary Judgment with respect to Ground Four.

## CONCLUSION

It is therefore RECOMMENDED, for the foregoing reasons, that Respondent's Motion for Summary Judgment (Dkt. No. 26) be GRANTED; and the Petitioner's habeas petition be DISMISSED WITH PREJUDICE.

IT IS SO RECOMMENDED.


s/Bruce Howe Hendricks
United States Magistrate Judge

February 7, 2012
Charleston, South Carolina

**The Petitioner's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4ᵗʰ Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).